18538

MUTUAL SAVINGS & LOAN ASSOCIATION, Appellant-Respondent, v. MONARCH INSURANCE COMPANY OF OHIO, Respondent-Appellant.

(149 S. E. (2d) 633)

*Messrs. Edward E. Saleeby* and *R. W. Shand,* of Hartsville, and *Greer & Chandler,* of Darlington, *for Plaintiff-Appellant-Respondent,*

*Messrs. Paul A. Sansbury,* of Darlington, and *Wright, Scott, Blackwell & Powers,* of Florence, *for Defendant-Respondent-Appellant,*

July 25, 1966.

LIONEL K. LEGGE, Acting Justice.

In this action on a policy of fire insurance by a mortgagee-beneficiary, the Honorable C. Bruce Littlejohn, presiding in the court of common pleas for Darlington County, rendered judgment for the plaintiff on May 25, 1964; and from that judgment the defendant gave notice of intention to appeal to this court. Pending settlement of the record in that appeal, the defendant moved before the Honorable James

A. Spruill, Jr., resident judge of the Fourth Judicial Circuit, for a new trial on the ground of after-discovered evidence; and from Judge Spruill's order of August 1, 1964, granting that motion, the plaintiff gave notice of intention to appeal to this court. By order of this court, both appeals were consolidated.

The complaint alleged: that the defendant had issued its policy of fire insurance on a dwelling owned by Louise Easterling, with loss payable to the plaintiff as mortgagee; that while the policy was in force the insured property was totally destroyed by fire; that prior thereto Louise Easterling, without the plaintiff's knowledge, had transferred her interest in the property to her husband, Richard Easterling; that for some years after said transfer the plaintiff had continued to keep the policy in force by payment of premiums thereon, which the defendant had accepted; that the plaintiff had demanded payment, under the policy, of the balance of its mortgage debt, $5,500.00; and that the defendant had refused to pay the same, basing such refusal, according to the plaintiff's information and belief, upon the ground that Richard Easterling had obtained other insurance on the said property. The complaint also alleged that, according to the plaintiff's information and belief, the insurance carrier issuing insurance in the name of Richard Easterling was attempting to deny coverage on the ground that it had not had knowledge of the defendant's policy. The prayer was for judgment in the amount of $5,500.00 and interest.

The answer alleged: that the defendant's policy, with loss payable to the plaintiff as mortgagee, had been procured by Louise Easterling; that her subsequent transfer of the insured property to her husband, Richard Easterling, was actually and constructively known to the plaintiff, but the plaintiff did not report the same to the defendant, thereby violating the terms of the policy and relieving the defendant from liability to the plaintiff thereunder; that after the transfer of the property to him Richard Easterling procured through Sovereign Eastern Insurance Agency of Dar-

lington a policy of insurance from Underwriters Insurance Company, being its Policy No. H 3907384, which insured the premises in question in the amount of $10,000.00, with loss payable to the plaintiff as mortgagee, which policy had been mailed to the plaintiff by said Sovereign Eastern Insurance Agency; that the amount insured by the defendant's policy was $6,000.00; and that under the pro rata liability clause of defendant's policy its liability to the plaintiff, if any, could not exceed that proportion of the loss that such coverage bore to the total coverage under both of said policies. The answer prayed dismissal of the complaint or, if the defendant should be adjudged liable, adjudication that it was entitled to subrogation and that, to the extent of the defendant's payment, the plaintiff be ordered to assign its mortgage interest to the defendant.

The case was referred to the Honorable D. Carl Cook, Master for Darlington County, to take testimony and report his findings of fact and recommendations. Testimony at the reference was to the effect that the plaintiff's loan to Louise Easterling was made in 1953, at which time the defendant issued a policy of fire insurance on the property with loss payable to the plaintiff as mortgagee; that the policy in suit, issued in 1957, was a renewal of that policy; that the transfer of the title to the mortgaged property from Louise Easterling to her husband, Richard Easterling, was made by deed dated March 27, 1956, and recorded in Darlington County on March 28, 1956; and that the mortgaged property was destroyed by fire on July 15, 1961. The policy provision which the defendant contended had been violated by the plaintiff's failure to report to the defendant the transfer of the title from Louise Easterling to Richard Easterling was in the following language:

"Mortgagee Clause . . . . Loss, if any, on the item(s) subject to this clause as specified on the first page of this policy, shall be payable to the mortgagee (or trustee) as provided herein, as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein,

shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy: Provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

"Provided also, that the mortgagee (or trustee) shall notify this Company of any change of ownership or occupancy or increase of hazard, which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon, and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise, this policy shall be null and void.

"This Company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee (or trustee) of such cancellation, and shall then cease, and this Company shall have the right, on like notice, to cancel this agreement."

There was evidence, undisputed, before the Master that on two occasions subsequent to the recording of the deed from Louise Easterling to Richard Easterling the defendant had made payments to Louise Easterling and the plaintiff for losses covered by its policy in question, one of said payments, for fire damage, having been made in 1958, and the other, for windstorm damage, in 1960. There was no evidence that the transfer to Richard Easterling increased the hazard of the policy; or that the plaintiff had actual notice of the transfer; that the plaintiff reported the transfer to the defendant; or that the defendant gave to the plaintiff the notice required, under the quoted clause, to be given to a mortgagee-beneficiary prior to termination of its rights under the policy.

As to its allegation that Richard Easterling had procured a policy from Underwriters Insurance Company insuring the mortgaged premises in the amount of $10,000.00, with loss payable to the plaintiff as mortgagee, the defendant offered the following testimony:

Mrs. Andrews, the manager of Sovereign Eastern Insurance Agency in Darlington, testified that on May 26, 1961, that agency issued a home owner's policy to Richard Easterling, covering the premises in question, in the amount of $10,000.00, being Policy No. H-3907384 of Underwriters Insurance Company, with loss payable to the plaintiff as mortgagee; and that on that day she mailed the original of that policy to the plaintiff; that the policy was never returned to her, and that she had no correspondence with the plaintiff concerning it.

For the plaintiff, Mr. John Easterling, Jr., its assistant secretary-treasurer and office manager, testified that neither he nor the plaintiff had ever received the Underwriters Insurance Company policy concerning which Mrs. Andrews had testified; that the only knowledge that he had of any insurance on the mortgaged property other than that of the defendant was when he was in a conference with the plaintiff's attorneys two or three weeks prior to the hearing before the Master, in the course of preparation for the trial of this case, at which time Mr. Richard Easterling had in his possession both the original and the duplicate of the Underwriters Insurance Company's policy in question. This witness testified further that the plaintiff filed no claim with Underwriters or any insurance company other than the defendant; and that no part of the mortgage indebtedness to the plaintiff had been paid by Underwriters or any other insurance company.

In the light of the evidence before referred to the Master found, *inter alia:*

1. That the plaintiff had not had notice of the change of ownership of the mortgaged property from Louise Easterling to Richard Easterling;

2. That the defendant had failed to show that said transfer had in any way increased the defendant's risk;

3. That the defendant had not given to the plaintiff notice of its intention to cancel the policy, as required by the terms of the mortgagee clause;

4. That there was no showing of additional insurance being in force so as to entitle the defendant to prorating;

5. That there was no insurance of the mortgaged property in force, with loss payable to the plaintiff as mortgagee, other than the defendant's policy; and

6. That the insurance contract required the plaintiff, upon payment by the defendant of the mortgage debt, to assign its interest in the mortgage to the defendant.

The Master's report concluded that the plaintiff was entitled to have the balance of its mortgage debt, $5,139.87, paid by the defendant, with interest from December 1, 1962; and recommended that plaintiff be awarded judgment against the defendant accordingly, and be required, upon payment thereof, to assign its interest in the mortgage to the defendant.

To this report the defendant filed eight exceptions, which Judge Littlejohn considered and disposed of as follows:

1. That the Master's finding that the defendant's policy was in force at the time of the loss was erroneous, because the evidence showed that the plaintiff had breached the provisions of the mortgagee clause by having failed to notify the defendant of the change in ownership of the mortgaged property.

This exception was overruled, the court holding that the provision in question contemplated actual, not constructive, knowledge citing *New York Underwriters Ins. Co. v. Central Union Bank,* 65 F. (2d) 738 (C. C. A. 4); and that the Master's conclusion that the plaintiff had no such knowledge was supported by the evidence.

2. That the Master erred in not holding that the plaintiff had knowledge of the change in ownership, for the reason that its records showed that it had written letters to and had

dealt with Richard Easterling, after the transfer to him, referring to the mortgage debt as his obligation, and requesting payment of arrears.

This exception was likewise overruled, the court holding that failure of a mortgagee-beneficiary to notify the insurer of a change of ownership of the mortgaged property, of which the mortgagee has knowledge, does not forfeit the mortgagee's rights under the policy unless the change of ownership is such as to increase the risk, as to which there was no showing before the Master, or unless the policy provides that a change in ownership will render it void, which the policy in issue did not provide, citing *Shores v. Rabon,* 251 N. C. 790, 112 S. E. (2d) 556.

3. That the Master's finding that there was no other insurance on the property was erroneous because the preponderance of the evidence was to the effect that the policy of Underwriters Insurance Company was in force.

The court overruled this exception, pointing out that the policy referred to was not in evidence; and that even if there had been another policy the defendant would not be entitled to prorate unless it were shown to be concurrent, *i.e.,* insuring the same risk against the same casualty, with the policy in suit. *Laurens Federal Savings & Loan Association v. Home Insurance Co. of New York,* 242 S. C. 226, 130 S. E. (2d) 558; *Galloway v. Southern Farm Bureau Ins. Co.,* S. C. 147 S. E. (2d) 271. Opinion filed March 1, 1966.

Exceptions 4, 5 and 6, which in substance restated the contentions raised by the exceptions before discussed, were overruled for the same reasons.

Exceptions 7 and 8, which charged that certain statements contained in the Master's report were irrevelant and should be expunged from the record, were overruled as inconsequential and such as would not affect the result of the case.

From Judge Littlejohn's order confirming the Master's report and ordering judgment against the defendant in the amount of $5,139.87, the defendant gave notice of intention

to appeal to this court on six exceptions, raising the same issues that were raised by the first six exceptions to the Master's report.

We find no merit in the contention that because of the plaintiff's knowledge of the transfer of the property by Louise Easterling to her husband, and its failure to notify the defendant of such transfer, the policy became void and the plaintiff's rights thereunder forfeited. The mortgagee clause, hereinbefore quoted, does not so provide. The obvious purpose of the required notification is to enable the insurer to determine whether the transfer has increased the hazard, and, if so, to demand that the mortgagee pay the higher premium called for by the increased hazard, on pain of having the policy declared void. The mortgagee clause also provides that the insurer may cancel the policy at any time as provided by its terms, but in such case the mortgagee's rights continue unimpaired for ten days after notice of such cancellation.

The contention that the trial judge erred in confirming the Master's finding that there was no other insurance contract with loss payable to the plaintiff as mortgagee is also without merit. The defendant's attempt to show that there was such a policy got no farther than Mrs. Andrews' testimony that Underwriters Insurance Company had issued one on May 26, 1961, some two months before the fire, and that she had on that day mailed it to the plaintiff; but no such policy was introduced in evidence, and the plaintiff's office manager denied that any such policy had been received.

There being no policy before the Master other than that of the defendant, there was no evidentiary basis for the defendant's contention that it was entitled to *pro rata* contribution; and the exception charging error in the trial court's affirmance of the Master's finding in that regard is likewise without merit.

In our opinion the judgment of the trial court on the record before it, was free of error. Whether, and to what ex-

tent, it should be permitted to stand, requires consideration of Judge Spruill's order granting the defendant's motion for new trial on after-discovered evidence.

In support of its motion the defendant offered testimony in substance as follows:

That early in 1962 Richard Easterling had brought suit in the Court of Common Pleas for Darlington County against Underwriters Insurance Company on its policy covering the fire loss of July 15, 1961; that Mutual Savings & Loan Association (plaintiff here) was not named as a party to that action; that on February 28, 1963, counsel for Monarch Insurance Company (defendant here) had notified counsel for Underwriters that Monarch would look to it for subrogation if it should be required to pay Mutual under its policy; that on March 2, 1963, counsel for Underwriters had replied, advising that Underwriters had negotiated a settlement, but that he did not yet know to whom the disbursement would be made, and indicating that he would discuss the matter with Monarch's counsel later; that no order of settlement was ever filed in the Easterling case, which was stricken from the docket by Judge Littlejohn under Circuit Court Rule 82; and that it was not until June, 1964, that counsel for Monarch was informed, in a telephone conversation with counsel for Underwriters, that the Easterling case had been settled in May, 1963 (after the Master's Report in the instant case had been filed) by Underwriters' draft for $9,250.00 payable to Mutual Savings & Loan Association, Richard Easterling, and the latter's counsel.

A party moving for a new trial on after-discovered evidence must show that the evidence has been discovered since the trial; that it is not merely cumulative or impeaching, but is material to the issue and such as would probably change the result; and that it could not have been discovered before the trial by the exercise of due diligence. Such a motion is addressed to the sound discretion of the judge who hears it. *Ortowski v. Ortowski,* 237 S. C. 499, 117 S. E. (2d) 860.

The evidence adduced in support of the defendant's motion was clearly material and not merely cumulative or impeaching; it was not discovered until after the trial; and it is such as would bear directly upon the result, for it purports to show that the plaintiff's mortgage debt had been paid and that the plaintiff was therefore not the real party in interest at the time of the trial. The other essential factor, due diligence, is less ponderable and therefore most appropriately addressed to the sound discretion of the hearing judge. While the question is not free from difficulty, it is my opinion that Judge Spruill's finding of due diligence was not without evidentiary support and did not amount to abuse of judical discretion; and since the only question to which the motion for new trial was directed was whether the plaintiff's mortgage debt had been paid and the plaintiff was therefore not the real party in interest, I would remand the case for trial of that issue alone, and stay the judgment in favor of the plaintiff pending determination of that issue. This opinion was originally prepared in accordance with the foregoing view on this point; but my brethren do not agree therewith, for the reasons set forth in the opinion by Justice Bussey. Accordingly, the judgment on the merits is affirmed, and the order granting a new trial is reversed.

Affirmed in part; reversed in part.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur in part, dissent in part.

BUSSEY, Justice (dissenting in part).

I fully concur in the opinion of Mr. Justice Legge as to the affirmance of the order of Judge Littlejohn, but am not in agreement with the portion of the opinion which allows a new trial.

The contention of Monarch that it is entitled to a new trial, and the order of the lower court granting the same, are predicated on Monarch's claim, asserted throughout the litigation, that the policy issued by Underwriters to Richard Easterling constituted other insurance which would inure to Monarch's benefit under the terms of

its policy. If I understand the opinion correctly, the effect thereof will be to allow Monarch to relitigate the issue of whether the Easterling policy was, legally and factually, such other insurance.

Stripped of the characterizations given to it by counsel, the newly discovered evidence relied upon by Monarch to obtain a new trial is the simple fact that the draft issued by Underwriters in settlement of the case of Richard Easterling included, among other payees, the name of Mutual. Whether, as contended by Monarch, Mutual was included because its interest was insured by Underwriters' policy, or simply as a matter of precaution on the part of Underwriters, simply does not appear by any competent evidence in the record.

I do not think that the conclusion that counsel for Monarch exercised due diligence in discovering the simple fact, now relied on, is supported by any evidence in the record, but even if we assume that it is so supported, the record clearly reflects an absence of due diligence with respect to the controlling issue of whether, in point of fact, there was, at the time of the fire, other insurance which would inure to the benefit of Monarch under the *pro rata* clause of its policy.

Monarch pled the policy issued by Underwriters to Richard Easterling and proved its issuance but not its contents. In the course of the hearing before the Master it was brought out that both the original and duplicate policies were in the possession of Richard Easterling. The record reflects no effort on the part of counsel to subpoena Richard Easterling, *duces tecum,* or to otherwise introduce the actual policy into evidence. Having failed to exercise any diligence to bring the policy before the court so that the question of the existence or nonexistence of other insurance could be determined, Monarch should not now at this late date be allowed to relitigate this issue.

I would, accordingly, reverse the order granting a new trial.

Moss, C. J., and Lewis and Brailsford, JJ., concur.